parties would approach that podium and tell us who you are and who you represent, starting with the attorney for the afternoon. Please call the first case. 12-DAC-1722, Peoples v. Terry. Good morning. My name is Nick Albuquerque, A-L-B-U-K-E-R-K. It's actually John Nicholas Albuquerque, but I go by Nick. And I am a pro bono counsel for Terry Duke appellant. Good morning, Your Honors. Dave Ryan. And I represent Dr. Jacqueline Buck, Ph.D., who is apparently a counter-defendant or third-party defendant in the counterclaim third-party action. We'll figure out what she is. Don't worry about it. And it might be dispositive. Any time you're ready, Mr. Albuquerque. Thank you. May it please the Court. This case is ultimately a case about due process. And the question is whether or not the State's experts who are employed by the State solely for the purpose of rendering this particular diagnosis, whether or not these experts, so-called experts, will be able to commit medical malpractice unfettered with literally nothing stopping them in an SVP proceeding. Well, let's start with that. You make the strong point in your brief that they're State agents and that's why they're parties and that's why you were able to file an answer rather than a counterclaim. Your counterclaim, rather, is part of your answer rather than the court permission, right? Correct. Now, and you make that argument on page 10 of your brief. Let's take that as being true. Let's accept your argument. They're agents of the State. How is it, then, that sovereign immunity doesn't apply? How is it you don't have to file this in the Court of Claims since Dr. Buck only looked at this person, your client, as a result, in her case, of a court order. Is that right also? Yes. All right. So she's there. The court orders her. You go do what the court wants the court to do, not Dr. Buck. So I tell order, Dr. Buck, you are to see Mr. Duke and tell me what you think of him. How is it you can come into any court other than the Court of Claims and sue against the State agent? Well, the problem with that, and it's something that I considered and my client considered, but the problem with that is then you get the same problem that you have in every other proceeding, especially the Lieberman case in the Fourth District. And you represented Mr. Lieberman, did you not? I'm sorry? You represented Mr. Lieberman as well? I was, yes. I was assisting Mr. Stein in that case. Okay. But in any event, you have a problem then because now you're in two different jurisdictions. You're in two different courts. How so? What two courts are you in? Well, now you've got an SVP proceeding going on in the criminal courts. In the criminal courts. And then you've got another proceeding going on in the Court of Claims. Now you're going to have to do. Is that difficult to do? It would be impossible to do because you would have conflicting, because then you would have conflicting judgments. You could potentially have one court saying one thing, another court saying another thing, two different triers of fact coming to two different conclusions completely with two completely different set of facts. Well, the criminal case would trump the Court of Claims case should everything, anything at all happen in the Court of Claims, would it not? Well, it's not a criminal case. No. But in a criminal case, the civil case in the criminal court, the SVP proceeding under Lieberman would trump any other verdict. Is that right? It would if that case were tried first. And that's the reason why I specifically brought this action. Would the other not be true? So would the Court of Claims, if you followed, if you obeyed sovereign immunity. Right. And you filed in the Court of Claims. Right. Is it your position that the Court of Claims adjudicator, the judge, whatever you want to call them, if they filed for your client, they would have to throw out the SVP petition because there's no verdict against that could stand? No. No, what would happen in that case is as soon as I filed in the Court of Claims, then counsel for the state and counsel for Dr. Buck would then file an action saying, wait a minute, this should be, then you can apply things like the Heck rule might apply and also the Younger Extension Doctrine might apply. Those, because it's two separate proceedings and therefore you have two separate triers of fact. And if that happens, you could potentially end up with two completely different judgments at the same time, depending on the timing of those suits. So it would create a real mess in terms of unity of decision. You want to have, I believe the policy of the courts would be to have one single decision being made in terms of whether or not this guy is a sexually violent person and whether or not. And that would trump sovereign immunity, the idea that your desire, your perceived need to have this heard by one tribunal would trump the idea of sovereign immunity. Well, it's either that or it couldn't be heard at all. It's one or the other. I mean, unfortunately, if I pursued, you're just. You're the one saying they're state agents. You're the one saying Dr. Buck is somehow a party to this, not a witness now, but a party. Right. Because she's an employee of the state. She's an agent of the state. But as an agent of the state, doesn't she have discretionary privilege? I don't believe she does have discretionary privilege in terms of committing medical malpractice, although maybe I misunderstand your point. Well, discretionary privilege is that the state officers are permitted leeway in how they make their decisions. And this doctrine bars any actions against them. But in particular, in the SVP statute, it says any agency or officer, employee, or agent of an agency is immune from criminal or civil liability for any acts or omissions as the result of a good faith effort to comply with this section. Nothing in your briefs about good faith. So this is a statutory bar. Well, and, in fact, that was raised in the Fourth District Lieberman decision. And it was not raised, obviously, by appellees. And I think the reason why is because what we're talking about here is gross negligence. We're not talking about a good faith effort. I believe the case law on that is that only good faith efforts by a state actor, such as you've pointed out, are permissible. This is gross medical malpractice. This is beyond the pale. But originally, this is a second duel, all right? Originally, in 2002, there was an evaluation made and there was a commitment under the SVP, right? Correct. Okay. Which we've said. So it's in existence. If the Attorney General had not decided in, what, 2010 to take a review of this, this wouldn't have happened. But it doesn't undo what the original determination was. Well, with all due respect, I believe it does, because if Drs. Buck and Dr. Weidel had both followed their ethical principles and acted within the scope of care, what would have happened is they would have said, Mr. Duke has no symptoms for the last 30 years. We have no symptoms at all of any compulsion of a mental disorder. And PNOS non-consent does not exist. We have no disorder. Therefore, Mr. Duke does not suffer from anything. Therefore, Buck and Weidel come back and say, this man doesn't suffer from anything. Mr. Duke gets released. Well, he doesn't appear to be suffering at all because he's never sought his own release. I'm sorry? He's constantly had continuances over this during his confinement. He hasn't gone to finality. He could have. Well, actually, we have sought no continuances in the last two years. We have asked for it. Well, there was ten years in between. Absolutely. However, my client has seen the statistical likelihood of winning at a jury trial and has decided to pursue his appellate options. As far as we know, out of 500 cases, there's only been one or two wins in the entire state. So statistically speaking, my client has decided that his appellate route is his best options, and he's taken those. And we have sought very, very hard to get discovery for most of that time, and it's been denied to us. His request is for damages on loss of consortium? I don't know that he – that may have been included in the complaint, but that would be one of the things that he's asking for. But primarily, he's asking for his freedom and the damages from his loss of freedom. How can you say that if he has a key to the – he has his own key to get out, then he doesn't use it? Because if he were to go to trial without this medical malpractice case, he would not be able to make the arguments necessary before the jury to have a reasonable chance of winning. Well, but then, again, the purpose of Lieberman, evidently, was to get through this issue of when do you do it and how do you do it. Right. And so in terms of timing, somebody's got to get first step made. We're not getting any step made here. Judge, I can only tell you that the case has been set for trial now for a year and a half, and I have asked for no continuances. It's been continued four times, and I'm ready for trial, and I have said I'm ready for trial, and I have demanded several times over the last year and a half. I assure you I am trying to get to trial with my client, Mr. Duke. Mr. Duke, in the last two years, has seen the writing on the wall and has wanted to go to trial in the last two years. We have asked again and again and again to go to trial. We have not caused those continuances in the last two years, and the only reason the case has been continued in the last six years is because the state has continued to change experts, and every time they change experts, we have to do a whole new round of discovery. This is not our fault. You have a new expert, Dr. Buck. When was the first time Dr. Buck saw Mr. Duke? I believe it was 2008.  Correct. So he's currently being held on a petition which he had nothing to do with its creation, but she is a potential witness against him in some future hearing. True. What expert do you have? Did you file, pursuant to 735 ICLS, I know, Civil Practice Act, a medical expert's affidavit in support of your idea to support your argument that Dr. Buck committed medical malpractice? A 2622 affidavit. Yes, Dr. Craig Ripma was filed, and also we filed within the discovery that affidavit from Dr. Chester Schmidt, who is the writer of the paraphilia subsection of the DSM, and then there's all the articles that we filed from all the writers of the DSM, all of which say the same thing, that paraphilia, not otherwise specified non-consent, is a bogus diagnosis that should not be used in forensic settings. It's been recognized by the Seventh Circuit in the McGee case, has it not? Actually, in the Brown v. Waters, it has been recognized that... The question is about McGee. Did McGee hold specifically what you're saying, disagree with what you just said? I could be wrong. I'm not familiar with the McGee case, and I apologize. No problem. Go ahead. But Brown v. Waters, which was a Wisconsin federal case, specifically did say that paraphilia, not otherwise specified non-consent, does not exist in the DSM. And analogously to us, we get to our problem in this case, and that is that the SVP statute is so ludicrously broad that anything goes. In the SVP statute, the expert can literally argue anything. No, it doesn't. The act, Duke was not a party to the case and sought a counterclaim. And there are no counterclaims or cross-claims in these cases, evidently. You can't add a claim against the non-party without the leave of the court, and that wasn't asked for. So it's waived. So what's the premise of your action? The premise of our action, well, in terms of filing our counterclaim, our argument is simply that because Dr. Buck and Dr. Weidel, we believe they are parties. Why do you believe they're parties? Because they're agents? They're beyond agents. Are they employees of the state? Yes, they are employees of the state. They're given a flat salary to render these diagnoses again and again and again. If they did not render these diagnoses, they'd be fired. They wouldn't be retained anymore. This is no different than some of the medical malpractice firms in this city turning to one of their doctors who are on staff and saying, hey, would you be my expert? But it's not a preserved claim. And I don't think I understand that argument. Well, because when there was an attempt, it was too late on the attempt to bring the counterclaim, which wouldn't be permissible anyway. You never filed a separate claim, did you, against Duke? Against Mr. Duke? Against Buck, rather. Yes, I did. I filed a separate claim against Dr. Buck and a separate claim against Dr. Weidel. Yes, I did do that. And I entitled them both as counterclaims. But were they taken as counterclaims? Did the court take jurisdiction of them as counterclaims? Well, I can only tell you what the trial court said. I can't tell you what it was thinking. It said that it had allowed these to be filed and that he was then dismissing the case because he believed that the Lieberman case from the Fourth District stood for one proposition, and that is one can only attack these state experts for medical malpractice if Mr. Duke is committed and then through the appellate process or habeas process is found then not guilty and then he could sue even though he would be well past the statute of limitations. Well, that's exactly what he's doing. He hasn't gone forward with this to complete the action that put him under the code. And so he voluntarily put himself in this position. Well, Judge, again, I can only ---- Lieberman says what it says. How many ways can we attack this thing? I mean, how many different outcomes can you have after Lieberman? You have one under this circumstance. I don't believe so. I believe that the Lieberman court said that these issues should be brought up before the trial court, and that's a specific quote, almost a specific quote. That's just a generic statement. Someday, one way or another, it should be, and it hasn't been. If you're looking for finality here, this has not been the road to finality. We've been ready for trial for years, Judge. That's the only thing I can tell you. I mean, I can't force the court to go forward. Under your medical malpractice theory, did you have a theory that somehow this was a therapeutic relationship between Dr. Buck and Mr. Duke, that she was treating him in some manner? No, but certainly she isn't. She is not treating him in any way, shape, or form. However, she still has an ethical duty to comply with the standard of care. She is not relieved from the standard of care for her profession. Is she providing care? Sorry? Is she providing care to him in any manner or form? Yes. When she rendered a diagnosis, she is rendering some measure of care. To him? Yes. Even though the care would be, in this case, her expressed opinion that he's extremely dangerous to all sorts of humans and he should remain locked up? That's care for him? It's care that he certainly doesn't agree with, but that is care because that diagnosis is then used, specifically relied upon, by the Rushville Treatment and Detention Facility. It absolutely is, but how does that care? Generally, doctors are there to help people. Generally. Right. And so you go see a doctor and they have all sorts of confidentiality rules and they're there to try and treat you and make you a better human being. Right. That's not true in the SVP context, I suggest to you. That's correct. These doctors are there to talk to you and see, based on their best judgment, whether or not you should remain in a cage for however long they determine. The rest of your life. Could absolutely be true. No question about it. I don't see how that's care. I don't see how that falls under the idea of therapy for Mr. Duke or anybody else from that doctor. There may be some doctors there at Rushville who may be, you know, giving him pills or trying to talk to him and trying to find out, you know, trying to assist him in some recovery, but that's not Dr. Buck's position. Her position was ordered by the court to evaluate him for the court. Right? Well, and I think the proper analogy here would be an emergency room, you know, doctor who sees someone. Well, they're there to provide care. But she's doing the exact same thing. She's making a diagnosis that is going to affect his treatment. It's going to affect his life. And that is enough of providing care that she would fall under the Medical Malpractice Act. I would suggest to you just the opposite. So when you go to ER, and I've been in ERs, I worked in ERs for six years, and then you go there with chest pains or a harpoon in your chest, they're there to try and save your life and save you long enough to get to the docs upstairs. Doctors, however, in the clinical, in the forensic sense, are not there at all. In this case, to be a witness, a paid consultant witness, a court-appointed witness, are not at all to provide care. That's absolutely nothing to do with what they're supposed to do. You may want to look up a case that's written by me and by a Supreme Court-affirmed it called Johnston v. Weill at 396-0F3-781. And then there's an affirmance. I know it well. 396-0F3-781. I know it well, and I have quoted it often. Well, there you go. Well, in that case, so the court-appointed expert, the child custody expert, is not there to treat the children or the parents. That expert is there to make a determination based on that person's abilities to say where the kids should go and why. They write a report, and the report is ordered by the court. Right? So how do you get around that? How is that different than that? Well, this is true. However, I don't believe, and I know I've read the case many times, and I know you're the one who wrote it, but I don't believe in that case you specifically answered the question of whether or not, you know, treatment and care was being provided. I think that case was based on, correct me if I'm wrong, was based on whether or not there was a confidentiality bar and not whether or not that particular doctor was subject to the Medical Malpractice Act. Well, actually, all right, so the holding, quoting, since the court-appointed professional evaluates custody issues, the position taken by Section 604B professional may be adverse to one of the witnesses who participates in the evaluation. This is contrary to the goal of mental health services that are provided in the context of a therapeutic relationship between a therapist and patient. So there is no therapeutic relationship, and the Supreme Court affirmed that issue, saying court-appointed evaluators are not therapeutic. They have nothing to do with therapy. They're not there to help anybody. And that's not their goal. Their goal is to assist only the court. And I'd suggest Dr. Buck is in that position. True, but what that did not say specifically, and perhaps Your Honors will say that specifically, is whether or not these doctors should still fall under the Medical Malpractice Care Act. And the reason I would argue- Just ask from a more classical malpractice setting. In a malpractice setting, you have a duty, breach of duty, proximate cause. Right. What duty did Dr. Buck have with your client, if any, and how did he breach that duty? Dr. Buck-  Now, I'll throw this at you. Maybe you can throw it into your answer, too. But we don't have a causal relationship yet until there is finality to the proceeding under the sexually violent person. Let me take that backwards, then. And that really touches on something that Apelli's brief touches on, which is one of damages. We believe that there are damages immediately. We believe that damages occur as soon as Dr. Buck and Dr. Weidel file, as soon as their opinions are incorporated into the petition. The reason why is because, as I made some allusion to earlier, what happens is, is if Dr. Buck and Dr. Weidel say that Mr. Duke doesn't have a mental disorder, then he gets released immediately, and he's a free man today. You've got experts saying that, though. He's not free, right? Well, exactly, because the only thing that matters to the court is what the state's experts say, not what our experts say. Well, always? I mean, and that's a mix of one out of 500. I mean, he's being detained based on whose opinion? On the state's experts' opinion, specifically the IDOC evaluator, the 90-40. Well, the 2002 opinion, right? Well, the 2002 opinion replaced by Dr. Buck in 2010 or 2008. She replaced that opinion, because she replaced that opinion. I mean, he's been held in custody since 2002. Correct. That's true. So we cannot sue, then, for the time in custody between 2002 and 2008, but we are certainly suing in damages for his time in custody from the time Dr. Buck got involved in the case, because she replaced that Illinois Department of Corrections evaluator. And that's the basis for holding him. Well, we have a classical fact question of whether he should be held or shouldn't be held. Your experts say he should not. Dr. Buck says he should. And based upon that, we have the issue. And until the issue is resolved, he won't be released or held. Well, and with all due respect to the Court, the problem with that analysis is that then we allow these doctors to commit medical malpractice. Well, that's sort of putting the cart before the horse, because we don't know. That's what courts are for, is to resolve disputes. So let's get back to the duty and the breach of duty aspect of your malpractice claim, because you have duty, breach, and then approximate cause. We're not even near approximate cause yet, because it could well be that Dr. Buck's opinion, when heard, would be rejected and your client would be freed. Now, I know you think that's not going to happen, and you're probably right. I'll concede that. But we don't know. And, Judge, I probably should point out and kind of update the Court. Obviously, the SVP case is continuing to go along. I've been trying to get the case to trial, and so has the Court to a certain extent. But what has happened in the meantime is Dr. Buck, and I believe it is because of the fact that she had an ethics complaint against her. She had the Lieberman case. She had this case against her. She now says that she has been taking medication, which renders her unable to testify. So she's not going to be testifying. But what we have in front of us is my question. What's her duty towards her client, and how did she breach that duty towards her client? What physician-patient relationship creates the duty that she breached, according to your malpractice theory? And we did lay this out in our complaint a little bit, and that is we simply believe that any time a doctor takes on to diagnose a patient, knowing that that diagnosis is going to have a severe impact on his life, that that doctor has undertaken and has assumed a certain responsibility right then and there. But I think Justice Quinn's point was that it's not a physician-patient relationship. It's a witness relationship, an expert witness evaluating a situation, a mechanical engineer expert analyzing a machine. I hate to do that analogy when a human being's involved, but analyzing a machine and says that, based upon my expertise, the machine is improperly functioning. The owner of that machine or the adverse party can't sue that expert for malpractice or breaching the standard of care of engineers because he's wrong, in their opinion. All true. So there's no relationship there. That's the difficulty I'm having. I think it was brought out in Justice Quinn's question. And I understand. I certainly understand the point, and I understand where the Court's going with that. Except for one fundamental difference, and that is that this human being, because of this diagnosis, wound up being imprisoned, which is a fundamental right. But with all due respect, we don't know that until the hearing is held and a result is rendered. It was rendered during the detention hearing and then supplanted in 2010 when the Court allowed the update of the petition. So it was determined in those proceedings not – eventually we'll get to the point where we have a trial. Eventually what will be decided is whether or not Mr. Duke should be held for probably the rest of his life. But that's a different issue. Over a malpractice claim? If that's resolved against you. Because of a malpractice claim? Because the doctors for the State are allowed to engage in medical malpractice. But you're presuming what the end would be, and that's not what Lieberman does. Overall, in Lieberman, this – and you're very understanding of Lieberman. But it says, in this case, plaintiffs are attempting to collaterally attack their lawful confinement by alleging medical malpractice in their SVP diagnosis without challenging their underlying confinement. That's exactly the situation we have here, correct? No. It's not? No. It says, clearly a successful claim would be inconsistent with their lawful commitments. The adoption of the HECS scheme here avoids the inconsistent effect of awarding money damages for unlawful detention to lawfully confined plaintiffs. Such a result is also consistent with the longstanding judicial policy of avoiding conflicting judgments. While plaintiffs maintain any award would not necessarily imply the invalidity of their continued confinement, it is irrelevant that the plaintiff disclaims any intention of challenging his conviction. And that so far hasn't occurred because of your case deflanguishing, correct? No fault of our own. Fault or otherwise. And it says, the intention of challenging his conviction, if he makes allegations that are inconsistent with the convictions having been valid, HECS kicks in and bars his civil suit. Here, no matter how you color it, plaintiffs appear to be asking for a declaration of their commitments were wrongly decided. Plaintiffs' success in this action would implicitly question the validity of their commitment proceedings. Moreover, we can reasonably foresee a scenario not long down the road wherein any monetary award would in turn be used by plaintiffs to buttress a claim they were wrongfully committed in the first place. Instead, the better way to proceed is to directly appeal from the denial of a petition for discharge or to file a writ of only after the favorable termination plaintiff's confinements may they pursue, only after the favorable termination plaintiff's commitments, may they pursue their claim for money damages. That is the law. But with all due respect, that is only after a jury has convicted my client. My client has not been found to be an SVP yet, and therefore, this is the proper time in the trial court to bring these issues, because all the issues can be decided at the same time. And I don't believe HEC and Lieberman stand for that. I think what they're saying is you're going to make more mischief, and they're trying to not have the intermix of these two things, which will be, which undo one part of a case to create another case. I believe that a jury. That's what Lieberman says. That's what I just read to you. That is. But remember, that's only after a conviction, after a finding by a trial court. This is not. We are in a proceeding before that. Dan, I think we'll have to wait until you finish your trial. Well, all due respect, I believe if we finish the trial, Mr. Duke's issue of whether or not this constitutes medical malpractice will be heard by no one ever. And therefore, he will be denied fundamental due process to have this issue ever heard. Well, that's a civil case, right? These are both civil cases. Correct. These are all civil cases. That's the reason why it's legal. That's the reason why it should be okay. That's the reason why it should be allowed. You'll pick it up after. There is no after. All the cases say that we'd be completely barred. That Lieberman case said we'd be barred. And then also we have statute of limitations. And then the case cited to Griffin by Pally essentially says you'll never get to that issue because you'll be barred by the statute of repose or the statute of limitations or something else. Therefore, this issue never gets heard, and Mr. Duke's procedural due process is denied. But, well, you're in a regnum here. You're not anywhere right now. And so you've got to have something to appeal for. I think we would have all the issues heard in the trial court if the trial court were allowed to hear, if the trier of fact were allowed to hear two issues, and that is both whether or not he committed medical malpractice, and at the same time whether or not he is an SVP, because those two issues are very closely related. They're not the same, but they're very closely related. Why don't you have a seat, and we'll hear from the other side for a little while, and then we'll give you some time for reply. Thank you. Mr. Ryan. Good morning. It's been fleshed out pretty well here. I think one issue that wasn't fully fleshed out is what Lieberman was saying about raising these issues in the trial court or in the SVP proceeding. So, I think what he's saying is as a defense, Mr. Duke's defense to this SVP proceeding to have him committed, he must raise the issue of the, I guess, appropriateness of Dr. Buck's opinion. So he goes to this proceeding. He cross-examines Dr. Buck. Is this within the DSM? It's not. Where did you find it? Is it accepted by experts in the field? No, she says. I just made it up or whatever she says. He brings his own expert who says, I wrote the DSM. It's not in there. This is an invalid diagnosis. There is no mental disorder of this kind. That's the issues that Lieberman is saying Duke has to bring up. It's not saying you file a medical malpractice case as a response to an SVP proceeding. It's saying you attack what you claim is error or an opinion which is unsubstantiated or an opinion which does not meet or comport with experts generally in the field of psychiatry. If he wins that, then he's not committed. He wins the proceeding, and the proceeding has been terminated in his favor, which follows Hack and Lieberman. Then he can file his malpractice suit. He may not win it. He's still got to, like any other plaintiff, as Your Honor said, you have to prove duty, breach of duty, proximate cause, and damages. You know, it may be that during the course of the SVP proceeding, the court makes rulings which may be in favor of Mr. Duke as to the admissibility of this opinion by Dr. Buck, which may assist him in his malpractice case later as res judicata perhaps. But anyway, I think the point is that, and even Hack, the Supreme Court, U.S. Supreme Court, and Hack says that the appellate court underneath it, whichever circuit that was, had raised some issue about perhaps the statute of limitations comes into play here because the person's been incarcerated and gone through the criminal process for so long. But the Supreme Court said, well, we discount that because the cause of action for the malpractice, or in that case the 1983 action, doesn't accrue until the prisoner's been damaged. And the damage, or until his conviction has been overturned or he somehow wins release in the criminal case. So that's when his, that party, criminal party, alleged criminal, that's when his action accrues for purposes of statute of limitations. So that's how they address that. Could equitable tolling be involved? In other words, it's a situation where you have no control or knowledge of something and therefore you're precluded from utilizing it? I'm sorry, Your Honor. Equitable tolling? Equitable tolling, right. I mean, that's an argument that can be made. I don't know. You know, this, we're here today, you know, on the pleadings and on the, you know, the law behind, you know, whether this malpractice case can be brought in an SVP. It's only, you know, we, the counterclaim was filed. We filed a motion to dismiss. It's been heard in the circuit court and that's where we stand. Does your firm represent other doctors, forensic psychiatrists? I don't believe so. Okay. Well, somebody better up their game, Mr. Ryan, because as explained just now by Mr. Albuquerque in the opening argument, the SVP committees are filing ethical complaints against the medical forensic doctors who express that they're dangerous. They, in turn, are now filing medical malpractice suits against these same doctors, claiming they somehow have a therapeutic relationship with them. I suggest that's kind of a scorcher's policy to discourage forensic psychiatrists from coming into court and expressing their opinion. If I can notice that in five minutes, I suppose as a lawyer who's representing those doctors should also notice that. You may wish to look up both sides. Besides Lieberman, which talks about this diagnosis, this particular PNOS without consent, as being a diagnosis, it was affirmed by our Supreme Court. Our Supreme Court also talked about the same diagnosis in Radiation Tension of Stanbridge, 2012, IL112337, at paragraph 78. The Seventh Circuit considered this diagnosis and held it was a good diagnosis. In McGee v. Bartow, 593, F3, 556. You may want to look those up, since you're going to stay in this line of work, apparently. Anything else? That's all I have, Mr. Ryan. Pardon me? That's all I have. Okay. Well, at any rate, I believe at this stage of the proceedings in this case that Lieberman controls through heck and that medical malpractice action, however it's termed, has to be dismissed. Thank you, Your Honor. Very briefly, Mr. Albuquerque. The problem here, from a legal standpoint, is that if the trial court's grounds are sustained and if Lieberman from the Fourth District is specifically interpreted to mean that no cross-action or counteraction can be filed, we would be greatly expanding the equitable estoppel. Because for the first time in Illinois jurisprudence, for the very first time, we would allow an action to be barred not because of a final determination on the merits in a separate proceeding, but merely because a trial is pending or is potentially going to happen sometime in the future. Equitable estoppel can only be had if there is a final judgment on the merits. So this Court, if it endorses the finding of the trial court, would for the very first time unmoor equitable estoppel from a finding that a finding on the merits, a full finding on the merits is what bars this other proceeding. I mean, what we're going into is a huge expansion. And this case could potentially be used in all sorts of interesting ways because unfortunately equitable estoppel has to be based on a finding by a trial court, a final finding by a trial court, not a potential finding in the future. So I would, with all due respect, ask Your Honors to reject that particular interpretation. In Lieberman, there was a 2619 and a 2615 motion filed. Did you file any motions of that nature here? I did. I'm sorry. I apologize. Not in the Duke case. I did not do that. I did file many motions to dismiss, but not those specific motions. But you missed it in this one. And in Lieberman, the court found equitable estoppel. It says it was brought up and plaintiffs argued that it wasn't. And the court ultimately ruled that it says the court finds that the plaintiffs participated in a prior case which arises in a different cause of action that I'm referring to specifically the SVP case. The court finds there's no controlling question material to the outcome of the prior case and has already been adjudicated against the plaintiffs. Now, there has been no adjudication in this case. But in that case where there was adjudication, then the court did grant it, but did based upon collateral estoppel. So if you don't make any movements in the SVP case the way it was done in Lieberman, again, you're short-circuiting the ability to get to the end here. I don't know what the premise is. The case that you have filed, under what jurisdictional grounds did you file it? As of right, we filed it as of right because my client is the victim of medical malpractice, and therefore we believe we were entitled to have those issues heard by a trier of fact. Was that a dismissal without prejudice? Yes, it was. You mean the dismissal in our trial court? Yes. It was a dismissal without prejudice with 304A language, specifically granted in there. So that's the reason I was able to bring it here. Also, Stanbridge and Bartow, and certainly I could be corrected by this court, but the question there was whether or not the diagnosis of paraphernalia, not otherwise specified, non-consent, complies with the SVP Act, not whether or not it complies with the Medical Malpractices Act. And I submit to the court that those are two completely different standards, that unfortunately, and I did allude to this earlier, unfortunately the SVP Act is an anything-goes act. The state's experts can get up there and say that my client suffers from cooties, and that cooties is defined by someone who's committed rapes 30 years ago, and that's good enough for the act. There's nothing stopping them from saying that because there is no minimum such as in the Medical Malpractice Act. In the Medical Malpractice Act, you have to stay within the standard of care. These doctors don't. Isn't it the function of the trial court to control the proceedings, to make sure that only relevant and admissible evidence is introduced? I completely agree with Your Honor. We have filed, in fact, based on the new case which just came out about four months ago or so, the new case came out. In fact, we filed, oh, excellent decision. We filed, you know, in fact, a F.R.I. hearing on that, and it was denied. Just to make clear, that's the name of the case, New, right? New, yes. Thank you. New is the N.E.W. Thank you. Thank you very much for the arguments and the briefs, and this case will be taken under advisory. Thank you.